# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 6884 | **DATE** | 3/31/2000 |
| **CASE TITLE** | Learning Curve Toys, L.P. vs. PlayWood Toys, Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. PlayWood's motion for reconsideration (Doc. 121-1) is denied.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | 3 number of notices | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | MAR 31 2000 date docketed | 168 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 3/31/2000 date mailed notice | |
| | Copy to judge/magistrate judge. | | |
| ETV | courtroom deputy's initials | ETV6 | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| LEARNING CURVE TOYS, L.P., | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 94 C 6884 |
| PLAYWOOD TOYS, INC., | ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant/Counterplaintiff, PlayWood Toys, Inc. ("PlayWood"), seeks reconsideration of an order granting the motion of Plaintiff/Counterdefendant, Learning Curve Toys, L.P. ("Learning Curve") to strike portions of a report offered by PlayWood's expert witness and to bar that witness from testifying. For the reasons set forth below, PlayWood's motion for reconsideration is denied.

## BACKGROUND

The factual background of the parties' dispute is well documented. *See Learning Curve Toys, L.P. v. PlayWood Toys, Inc.*, 1999 WL 529572 (N.D. Ill. July 20, 1999). Because this background is not necessary for the resolution of the evidentiary issue at bar, this court will not repeat those facts here. PlayWood asks for reconsideration of this court's bench ruling granting Learning Curve's motion to bar the testimony of Albert H. Lyter, III. ("Lyter.") PlayWood seeks to introduce Lyter's expert testimony as a means of establishing that certain notations on a document entitled "LCT 100 Day Agenda of Projects" were not written on or

about the same time as the rest of the document. According to Lyter's Rule 26 Report ("Rule 26 Report") (Exhibit 2 to Learning Curve's Post-*Daubert* Hearing Statement of Position), the ink formulation of the written entries on the document was similar to a standard ink formulation manufactured by the Faber-Castell Company, such as the commercially available "Uniball" pen. (Report, at 1.) Lyter further concluded:

> A relative aging comparative analysis of several different entries of the exhibit resulted in data inconsistent with the simultaneous preparation of the entries. This procedure is based upon the premise that as ink writing ages it changes and these changes can be detected and related to the age of writings of known preparation dates . . . Since the minimum detectable time frame using this technique is 6 months, the notation referenced would have been added to the exhibit at least 6 months after the remainder of the writing.

(*Id.*). It was Lyter's expert conclusion that the notation on the document was written at least six months after the preparation of the document itself.

In a bench ruling, this court granted Learning Curve's motion to bar Lyter's testimony. The court concluded that Lyter's report and his testimony failed to meet a legal standard of reliability necessary for the admission of expert testimony under FED. R. EVID. 702 and that because of the questionable reliability of his testimony, it would not assist a jury in either understanding the evidence or determining the issue. To determine whether expert testimony can be properly admitted as an expert conclusion, a court considers whether the conclusion (1) can be tested; (2) is based on methodology subject to peer review and publication; (3) has been evaluated in light of a known or potential rate of error and (4) has achieved general acceptance in the relevant scientific community. *Daubert v. Merrell Dow*

2

*Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993). This court concluded that Lyter failed to state the basis for his conclusion that any age difference detected by his relative age analysis reflects at least a six month gap. Lyter also failed to cite a specific source for his finding of statistical significance. Finally, Lyter failed to establish that the relative age analysis technique itself was based on methodology subjected to peer review and publication and generally accepted in the scientific community as required in this circuit. *See, e.g, Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996); *Porter v. Whitehall Labs, Inc.*, 9 F.3d 607, 616 (7th Cir. 1993). PlayWood now seeks reconsideration of that decision.

## DISCUSSION

A party may seek reconsideration of a decision where there has been a mistake of law or fact or where new material evidence has been discovered. *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996). Such a motion is not "at the disposal of parties who want to 'rehash' old arguments." *In re Oil Spill by Amoco Cadiz*, 794 F. Supp. 261, 267 (N.D. Ill. 1992), *aff'd* 4 F.3d 997 (7th Cir. 1993). The Seventh Circuit has repeatedly cautioned that motions for reconsideration should be reserved for circumstances where the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

PlayWood argues that this court made a mistake of fact in questioning the reliability

3

of Lyter's technique and conclusions. Much of PlayWood's motion presents the same arguments it made in response to Learning Curve's earlier motion to bar the testimony. First, PlayWood attempts to correct its failure to provide any basis and/or literature in support of the technique among the scientific community by submitting a newly published article discussing ballpoint ink aging analysis. Richard L. Brunelle and Erich J. Specking, "Technical Report With Case Studies on the Accelerated Aging of Ball-Point Inks," 4 *Int'l J. of Forensic Doc. Examiners*, 242 (1999). (Attached as Exhibit 1 to Declaration of Albert H. Lyter III). Notably, however, this article does not present evidence of scientific acceptance of Lyter's percent extracting technique at all, but describes an alternative technique in which heat is used to accelerate the aging process. Most importantly, although the article tangentially incorporates principles of percent extraction testing, it does not address the six-month minimum detectable time frame, which was the focus of much of the court's concern at the hearing.

In a similar vein, PlayWood attempts to address this court's finding that Lyter was unable to substantiate the research that underlay his conclusion that the percent extraction technique reflected a minimum six-month age difference. PlayWood now offers reports of that research. Contrary to Lyter's assertion on the stand that these tests were performed on non-ballpoint inks, (Transcript of Evidentiary Hearing of April 13, 1999, at 57-58), the reports state they were indeed performed on ballpoint inks. (Declaration of Albert H. Lyter, Ex. A to Memorandum in Support of Motion for Reconsideration or for Evidentiary

4

Hearing). Nevertheless, PlayWood argues that these reports evidence both the six-month minimum and establish the statistical reliability of the technique. Specifically, when there is even the slightest gap between standard deviation ranges, the samples are concluded to have been written at least six months apart. Conversely, if the standard deviation ranges do overlap, the conclusion is that the samples were written within the same time period. (Motion for Reconsideration, at 7.)

The court remains unconvinced. PlayWood rests its argument on the premise that fresher inks extract faster than older inks and thus yield a higher extraction percentage. PlayWood goes so far as to claim that this premise is "undisputed." (PlayWood's Memorandum in Support of Motion for Reconsideration or for Evidentiary Hearing, at 4.) But in the very articles and case studies that PlayWood submits to the court, even this seemingly fundamental premise is uncertain. In the newest article submitted by PlayWood, researchers have discovered that certain inks yield results that directly contradict this premise, to wit, the older the ink, the faster the extraction. Researchers have deemed this occurrence the "reverse extraction phenomenon":

> While newer inks usually extract faster and more completely than older inks into organic solvents, this is not always the case. For example, Bic black ballpoint ink is frequently, but not always, found to extract older inks faster and more completely than newer inks. The reason for this unexpected phenomenon is not fully understood . . . .

(Brunelle and Speckin at 242.) Although apparently not recognized by PlayWood, Lyter's own test of Uniball Rollerball black ink yields this result--the older ink of February 16, 1995

5

actually extracted further than the fresher ink of July 31, 1995.[1] Is Uniball ink subject to the "reverse extraction phenomenon"?

PlayWood offers that the aging curve found for Pilot black ballpoint ink in the Brunelle and Speckin article establishes the proper aging curve of the Faber-Castell ink at issue here. This is directly contrary to Lyter's testimony at the hearing; specifically, he testified that different inks have different rates of extraction, thereby producing different curves. (Transcript of Evidentiary Hearing of April 13, 1999, at 111.) He stated, further, that the slope/curve for Faber-Castell ink may be different than that for Pilot black ballpoint ink. Even if PlayWood had established that the Faber-Castell and Pilot black ink were scientifically interchangeable, PlayWood's attempt to establish that this court erred by impeaching its own witness's testimony with this "new" evidence is an inappropriate ground for reconsideration.

Still unaddressed are the effects of different kinds of paper on the ink extraction. While PlayWood rightly notes as a matter of scientific method it is impossible to reproduce experiments in precisely the same conditions every single time, the fact remains that Lyter testified that the type of paper affects the outcome of his test. Further, the Brunelle and Speckin article cautions that "comparison of ink on different paper should not be performed, unless it can be determined with the actual documents received for examination that the

---

[1] The February 16, 1995, sample yielded a mean extraction percentage of 35, with a standard deviation range of 35 to 36. The July 31, 1995, sample yielded a mean extraction percentage of 34, with a range of 34 to 35.

6

different papers had no effect on the test results." (Brunelle and Speckin, at 241.) For reliability purposes, this requires at least that the ink be tested on the same kind of paper as that used by Learning Curve. The court recognizes that both ink samples in this case appear on the same piece of paper. Nevertheless, PlayWood has not addressed the question of whether older ink is known to extract faster or slower from the type of paper involved here.

In sum, PlayWood has offered nothing to suggest that this court misunderstood the law or the facts presented at the evidentiary hearing. Its motion for reconsideration neither points to errors nor offers any new evidence. Instead, PlayWood merely attempts to cure deficiencies in its own arguments and in the testimony of its expert witness. Rather than curing deficiencies, however, the submission of the journal article and Lyter's reports serve to buttress rather than challenge this court's finding that Lyter's techniques were unreliable and likely to confuse a jury. For these reasons, PlayWood's motion for reconsideration must be denied.

## CONCLUSION

For the foregoing reasons, PlayWood's motion for reconsideration (Doc. 121-1) is denied.

ENTER:

Dated: March 31, 2000

REBECCA R. PALLMEYER
United States District Judge

(learning.cv)