Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 6884 | **DATE** | 3/31/2000 |
| **CASE TITLE** | Learning Curve Toys, L.P. vs. PlayWood Toys, Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. PlayWood's motion for reconsideration and for certification (Doc. 149-1) is denied.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 31 2000 date docketed | 169 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 3/31/2000 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LEARNING CURVE TOYS, L.P.,    )
         )
     Plaintiff,    )
         )
     v.    )   No. 94 C 6884
         )
PLAYWOOD TOYS, INC.,    )   Judge Rebecca R. Pallmeyer
         )
     Defendant.    )

MAR 31 2000

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Counterplaintiff PlayWood Toys, Inc.'s ("PlayWood") motion for reconsideration of this court's July 20, 1999 order granting partial summary judgment in favor of Counterdefendant, Learning Curve Toys L.P., Roy Wilson, Harry Abraham and John Lee (collectively, "Learning Curve"). For the reasons that follow, the motion is denied.

## BACKGROUND

The facts of this case are well documented in previous orders and this court will not repeat them here. *Learning Curve Toys, L.L.C. v. PlayWood Toys, Inc.*, No. 94 C 6884, 1998 WL 46894 (N.D. Ill. Jan. 30, 1998) (hereinafter "1998 Order"); *Learning Curve Toys, L.P. v. PlayWood Toys, Inc.*, No. 94 C 6884, 1999 WL 529572 (N.D. Ill. July 20 , 1999) (hereinafter "1999 Order"). Nevertheless, a brief synopsis of the procedural history is appropriate.

In December 1994, Learning Curve brought this action seeking a declaratory judgment that its production and sale of a toy wooden train track did not violate any proprietary rights of PlayWood. PlayWood filed an eight-count counterclaim against Learning Curve alleging

169

that Learning Curve is liable for breach of implied-in-fact contract (Count I), unjust enrichment (Count II), "idea misappropriation" (Count III), violations of the Illinois Consumer Fraud and Deceptive Practices Act ("CFDPA") (Count IV), violations of the Illinois Trade Secrets Act (Count V), violations of Sections 44(b) and 43(a) of the Lanham Act (Counts VI and VII, respectively), and violations Uniform Deceptive Trade Practices Act (Count VIII). Learning Curve sought summary judgment on all eight counterclaims. In the 1998 Order, Judge Grady, to whom this case was previously assigned, granted the motion with respect to Count I, but denied summary judgment on the remaining counts. The case was then reassigned to this court, and Learning Curve[1] moved for summary judgment on the remaining claims. In the 1999 Order, this court granted summary judgment for Learning Curve on seven of the eight remaining counts, leaving PlayWood with only one claim remaining: the Illinois Trade Secrets Act claim alleged in Count V. PlayWood now moves for reconsideration of the summary judgment grant with respect to counts IV, VI, VII, and VIII.[2]

---

[1] Although the summary judgment motion was brought only by the individual Counterdefendants, in its 1999 order the court concluded that because the "problems identified have equal force for Learning Curve," the challenged claims were dismissed in their entirety. *Learning Curve Toys*, 1999 WL 529572, at *5. The court also acknowledged that "[if] there are in fact arguments that mandate differentiating between the Counterdefendants' [sic] on these counts, PlayWood may make such arguments in a motion for reconsideration." *Id.* at *8. Although PlayWood challenges the court's substantive conclusions, it has not suggested that the court erred in concluding that arguments in favor of the individual Counterdefendants are not equally applicable to Learning Curve.

[2] In its motion for reconsideration, PlayWood did not move for reconsideration of summary judgment on Counts II (unjust enrichment) and III ("idea misappropriation").

(continued...)

## DISCUSSION

### Standard of Review

Motions for reconsideration generally serve a very narrow function and must be supported by a showing of extraordinary circumstances justifying relief from judgment. *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 684 (7th Cir. 1998); *see also Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th Cir. 1986). The rulings of a district court are not to be viewed "as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). Rather, motions for reconsideration are designed to correct manifest errors of law or fact or to present newly discovered evidence. *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). Accordingly, a motion for reconsideration is an "improper vehicle to introduce evidence previously available or to tender new legal theories." *Bally*, 804 F.2d at 404; *Bachman v. Bear, Stearns & Co., Inc.*, 57 F. Supp.2d 556, 564 (N.D. Ill. 1999) ("[A] party may not use a motion for reconsideration to introduce new theories or rehash old arguments."). With these principles in mind, the court turns to PlayWood's arguments for reconsideration.

### Illinois Consumer Fraud and Deceptive Practices Act - Count IV

PlayWood urges the court to reconsider its grant of summary judgment on Count IV,

---

(...continued)
(Motion for Reconsideration of July 19, 1999 Order or, in the Alternative, to Certify ("Motion for Reconsideration"), at 1 n.1.)

contending that the court misstated the law.[3] In the 1999 Order, this court found summary judgment in favor of Learning Curve appropriate because PlayWood did not satisfy its "obligation to show injury to consumers." *Learning Curve*, 1999 WL 529572, at *5 (citing *American Broadcasting Co. v. Maljack Productions, Inc.*, 34 F.Supp.2d 665, 680-81 (N.D. Ill. 1998) ("the CFDPA expressly requires 'proof of public injury' or 'an effect on consumers generally'")). PlayWood argues, at least implicitly, that this court's reliance on *American Broadcast* was in error because, PlayWood urges, the CFDPA "does not require a demonstration of 'harm' when trade practices are directed at the market." (Motion for Reconsideration, at 9.) Thus, according to PlayWood, it did not need to show public injury but merely needed to show that the misrepresentations or deceptive statements were made in the marketplace and to actual or prospective customers. *See, e.g., Petri v. Gatlin*, 997 F. Supp. 956 (N.D. Ill. 1997); *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, 657 F. Supp. 1486, 1493 (N.D. Ill. 1987); *Siegel v. Levy Organization Dev. Co., Inc.*, 153 Ill.2d 534, 607 N.E.2d 194 (1992).

PlayWood's argument fails to recognize, however, that under existing case law, PlayWood is not free to pursue a claim using "effect on consumers generally" as described in *American Broadcasting*. To the contrary, as discussed in the 1999 Order, the "statute does not

---

[3]     Playwood further asserts that this court's very consideration of Counts IV-VIII violated the doctrine of the law of the case because Judge Grady had already concluded that summary judgment was inappropriate on these counterclaims. This court has already rejected this argument in its 1999 Order, noting that Judge Grady had for reasons of judicial economy not actually reached the merits of those counterclaims. 1999 WL 529572, at *4. PlayWood offers no new arguments to establish that this conclusion was clearly erroneous.

'authorize a suit by a non-consumer where there is no injury to consumers'." 1999 WL 529572, at *5 (quoting *Amon v. Harrison*, No. 91 C 980, 1994 WL 532025, at *3 (N.D. Ill. Sept. 29, 1994)). As stated explicitly in the opinion, the test for standing when both parties to a suit are non-consumer commercial entities is whether the alleged conduct "involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Id.* at *4 (citing *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996); *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F.Supp. 1358, 1368 (N.D. Ill. 1996)). PlayWood does not argue that this statement of the law was incorrect. Significantly, all the cases cited by PlayWood in support of its argument that it need not establish harm to consumers involve claims initiated by consumers, not businesses like PlayWood. Nor does PlayWood contest this court's finding that Learning Curve's alleged deception did not harm or otherwise implicate consumer protection concerns. Therefore, reconsideration is denied on this count.[4]

## Lanham Act Section 43(a) Claims--Count VII

Based upon its analysis of PlayWood's Section 43(a) Lanham Act claim (Count VII), this court summarily dismissed Counts VI (Lanham Act §44(b)) and VIII (Uniform Deceptive Trade Practices Act). PlayWood argues that the court applied the wrong legal standard when analyzing its Lanham Act claims and that all counts must be reinstated. PlayWood further

---

[4]    In its reply, Learning Curve asserts that although not addressed in the 1999 Order, PlayWood's counterclaim under Count IV fails for lack of standing. PlayWood vigorously disputes this assertion. This court declines to address this argument because it is inappropriate for either party to bring in new legal theories on a motion for reconsideration.

argues that the court misconstrued PlayWood's basis of liability for its §43(a) claim. In short, PlayWood argues that it was not bringing a "false designation of origin" claim under §43(a) and that §43(a) is not limited to such false designation of origins claims.

PlayWood cites nothing in the 1999 Order to suggest that this court did not understand the nature of a Lanham Act claim. The Act predicates liability upon either (1) false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device (otherwise known as "false association" or "false endorsement") or (2) false representations in advertising concerning the qualities of goods or services ("false advertising"). *See L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993) (quoting *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992). Given the ambiguities in PlayWood's pleadings, this court interpreted the nature of PlayWood's claims as best it could. In its counterclaim, PlayWood alleges that "PlayWood is likely to be damaged by Defendants' false advertising." (Motion For Reconsideration, at 5, citing Counterclaim ¶ 73.) But in its response to Learning Curve's motion for summary judgment, PlayWood twice characterized its claim as a "false designation of origin claim." (PlayWood's Response, at 8.) Specifically, PlayWood argued that summary judgment should be denied because Learning Curve "falsely market[s] the wooden toy track to the public by misrepresenting Learning Curve as its originator," thereby creating a likelihood of confusion. (*Id.*)

In its latest motion, PlayWood insists that it was not making a "false designation of origin" claim (Motion for Reconsideration, at 5), but does not explicitly state that it is

6

bringing a false advertising claim. The court assumes, however, that this was PlayWood's intent, because PlayWood now cites §43(a)(1)(B), the portion of the Act addressing false advertising. PlayWood still does not explicitly state how it intends to establish that Learning Curve's alleged misappropriation of the design idea of the toy and its subsequent attempt to trademark the product is a misrepresentation about the *quality* of the product. In any case, to the extent PlayWood is now asserting a claim for false advertising, that claim fails for other reasons. "In order to have standing to allege a false advertising claim . . . the plaintiff must assert a discernible competitive injury." *L.S. Heath & Son*, 9 F.3d at 575. Neither in its motion for reconsideration, nor in its defense to the summary judgment motion, did PlayWood establish such a competitive injury.

In its reply brief, PlayWood finally zeros in on a precise legal theory: a variation of the false advertising prong of § 43(a) is presented in cases finding a violation in the false representation that a product is created, designed, or authorized by plaintiff. With the benefit of hindsight, this argument is arguably implicit in PlayWood's earlier briefs. A motion for reconsideration, however, is an inappropriate vehicle to cure ambiguities or to sharpen legal arguments. Further, to the extent this court may have erred in not explicitly addressing this argument, this failure did not result in a manifest error of law. The 1999 Order found that PlayWood could not bring a false designation of origin claim because PlayWood held neither a trademark nor was commonly identified with features of the toy at issue. These same factors militate against any claim that Learning Curve engaged in false advertising by including a "patent pending" notice on its toy.

7

Of the many cases cited by PlayWood in its reply, all but one fail to even address PlayWood's precise legal theory. One case does not even address the issue of the scope of a false advertising claim but deals with an evidentiary appeal on the misappropriation of a trade secret. *See Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226 (8th Cir. 1994). It is true that in *Blank v. Pollack*, 916 F.Supp. 165 (N.D.N.Y. 1996), a district court in New York found that a plaintiff stated a claim for false advertising on the theory of misappropriation of trademark. Notably, however, in that case the plaintiff actually held a trademark for the item in dispute, and the defendant had falsely advertised that it held a patent on that item. As discussed in the 1999 Order, PlayWood holds no patent for the toy and Learning Curve advertises that a patent is "pending"--which is a true statement. In short, PlayWood's new legal argument does not support a conclusion that the court's 1999 Order was in error.

### Lanham Act Section 44(b) and the Uniform Deceptive Trade Practices Act Claims--Counts VI and VIII.

PlayWood's next argument is that regardless of the type of claim it brought under the Lanham Act, it was inappropriate for the court to apply its reasoning from Count VII to Counts VI and VIII. As discussed above, in the 1999 Order, this court found that PlayWood failed to establish that any alleged claims to development of the toy made by Learning Curve were likely to cause "actual" confusion among consumers. 1999 WL 529572, at *6. PlayWood argues that the court made an error of law in applying this reasoning to the Deceptive Trade Practices Act ("DTPA") because actual confusion is not required under the statute. In

support, it cites the plain language of the statute, which provides that "a plaintiff need not prove competition between the parties or actual confusion or misunderstanding." 815 ILCS 510/2.

PlayWood's argument here suffers from the same shortcoming as its challenge to the Lanham Act discussed above: PlayWood fails to recognize that the law distinguishes between consumer and non-consumer plaintiffs. Case law interpreting the DTPA has never construed the statute's amended language as eliminating the requirement of a connection to consumers.[5] See, e.g., Athey Products, 89 F.3d at 436-7; Industrial Specialty Chems., Inc. v. Cummins Engine Co., Inc., 902 F. Supp. 805 (N.D. Ill. 1995); see also generally Edward X. Clinton, Jr., Business Standing Under the Illinois Consumer Fraud Act: An Attempt to Resolve the Confusion, 17 N. ILL. U. L. REV. 71 (1996). In the 1999 Order, this court found in essence that because any dispute between PlayWood and Learning Curve as to the origins of the toy was undetectable to consumers, such a consumer nexus did not exist. PlayWood offers nothing to refute that this was a proper understanding of the consumer nexus requirement.

Nor does PlayWood offer anything to suggest that if its claim were more properly characterized as a false advertising claim, the consumer nexus would have been met. This court's review of the case law establishes that PlayWood would not have standing to bring

---

5       The reasoning behind this requirement is in part due to concern that without such a requirement, contract law would be subsumed by causes of action brought under the DTPA. Without a consumer nexus requirement, any broken promise between business entities could potentially be characterized as coming with the scope of the DTPA. See Scarsdale Builders, Inc. v. Ryland Group, Inc., 911 F. Supp. 337, 338 (N.D. Ill. 1996).

such a false advertising claim, because PlayWood and Learning Curve are not competitors and

Learning Curve's allegedly "false advertising" did not disparage in PlayWood the consumer

market. *See, e.g., Empire Home Servs., Inc. v. Carpet Amer., Inc.*, 274 Ill.App.3d 666, 669, 653

N.E.2d 852, 854 (1st Dist. 1995) (allegations that competitor acquired telephone number

similar to the plaintiff for purposes of deceiving customers stated cause of action under the

Illinois Consumer Fraud Act); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 76 F.Supp.2d 868,

1248 (N.D. Ill. 1999) (cause of action under Illinois Consumer Fraud Act existed where

competitor advertised that jewelry items were on sale for 50% less than their "regular" price

when competitor never sold sell jewelry at that "regular" price).

Finally, PlayWood argues that the court also erred in applying the reasoning to its

claim for unfair competition under §44(b) because as a foreign corporation governed by the

Treaty of Paris, it need not hold a patent to pursue a §44(b) claim. In this court's view,

PlayWood's §44(b) argument mischaracterizes the 1999 Order. In that order, this court held

that PlayWood could not establish a claim under §43(a) of the Lanham Act because

PlayWood could not establish actual confusion among consumers in part because it did not

have an identifiable trademark. Because §44(b) of the Lanham Act, read in conjunction with

the Paris Union Convention, provides the same protections as §43(a), this court dismissed the

§44(b) claim. 1999 WL 529572, at * 7, citing *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*,

958 F.2d 594, 597 (4th Cir. 1992). The lack of a trademark was merely a factor in the court's

conclusion that there was no dispute of fact on the likelihood of confusion issue. Nothing

in the 1999 Order suggests that this court dismissed PlayWood's §44(b) claim failed solely

because PlayWood does not have a trademark.

**Request for Certification**

In the alternative to its motion for reconsideration, PlayWood requests that this court certify the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Certification is appropriate where there is a controlling question of law as to which there is substantial ground for difference of opinion and where an immediate appeal may materially advance the termination of the litigation. 28 U.S.C. § 1291(b). PlayWood's motion must therefore be denied. The question which PlayWood asks this court to certify for appeal, "whether the court erred in granting summary judgment on Counts IV, VI, VII and VIII" does not identify a controverted issue of law. Further, PlayWood makes no assertions as to how an immediate appeal on these counts, or others for which it is not now seeking reconsideration, would materially advance the termination of the litigation. This case has been docketed since 1994 and an immediate appeal on an undefined issue would only serve to prolong already protracted litigation. PlayWood's request for certification is therefore denied.

**CONCLUSION**

For the foregoing reasons, the court denies PlayWood's motion for reconsideration and for certification (Doc. 149-1).

ENTER:

Dated: March 31, 2000

REBECCA R. PALLMEYER
United States District Judge